IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| JEFFREY PYE and THERESA PYE | § | |
| | § | |
| V. | § | MISCELLANEOUS NO. G-10-mc-7007 |
| | § | (Lead Case No. G-10-cv-450) |
| FIDELITY NATIONAL PROPERTY | § | |
| AND CASUALTY COMPANY | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action was tried to the Court, with the consent of the Parties pursuant to 28 U.S.C. §636(c), on January 9 and 10, 2014. Now, having considered and reviewed the evidence and applicable law, the Court issues the following Findings of Fact and Conclusions of Law.

1. In 2008, Plaintiffs, Jeffrey and Theresa Pye, were the owners of a two-unit residential structure located at 6116 Avenue Q 1/2, in Galveston, Galveston County, Texas. They lived in one of the units and rented the other. They purchased the property in May 1996 for about $62,000.00. The property was professionally appraised in 2005 and it was determined to have a market value of $125,000.00 as of November 10 of that year.

2. At all times relevant to this case, the Pyes' home was insured under an Standard Flood Insurance Policy (SFIP) issued by Defendant, Fidelity National Property and Casualty Insurance Company (Fidelity), a WYO carrier under the National Flood Insurance Program, and by a windstorm policy issued by the Texas Windstorm Insurance

Association (TWIA). Because the Pyes' property included two units, the SFIP only provided coverage for the actual cash value (ACV) of a flood loss.

3. The Pyes made substantial repairs and improvements to the property which were completed "by Thanksgiving" of 2006. They later had the property professionally appraised to determine whether, *inter alia*, they needed to increase their insurance coverage. That appraisal determined that as of August 16, 2007, the property had a market value of $195,000.000 as of August 16, 2007.

4. For the policy period covering May 9, 2008 through May 9, 2009, the Pyes insured the property against flood loss in the amount of $205,400.00 for the building and $50,000.00 for its contents; each coverage provided for a $1,000.00 deductible.

5. On or about September 13, 2008, the Pyes' property was severely damaged by flooding and wind during Hurricane Ike.

6. The Pyes notified Fidelity of their claim and Fidelity had Colonial Claims Corporation send an adjuster to inspect their property damage. The adjuster, Jeff Robbins, determined, in his opinion, the ACV loss to the building and contents. He then prepared a Proof of Loss which the Pyes signed at his request. On December 18, 2008, Fidelity sent the Pyes payment "for building damage less deductible" in the amount of $76,968.23. Fidelity also sent a check for contents damage, less deductible, in the amount of $30,367.49.

7. Jeffrey Pye testified that they were "satisfied" with Fidelity's payment for contents, except for the failure to pay for some automobile parts he had been saving for years that were damaged by the flooding; he testified the parts had a value of $2,500.00.

8. The Pyes hired an attorney, Darrell Apffel, to represent them on their windstorm claim against TWIA. TWIA was sued in May 2010, and the suit was ultimately settled. The settlement funds were not allocated between the Pyes' numerous claims, however, the evidence established that from the settlement Apffel's fees and expenses totaled $39,773.76, and the Pyes received a total of $66,765.84 of the TWIA payments.

9. Apparently, Apffel referred the Pyes' flood claim to either Martin Mayo of Houston, Texas, or Samuel Bearman of Tampa, Florida. In either event, Bearman, at some point in time, had employed Halley Lovato and/or his company to provide expert damages estimates for numerous of Bearmans' flood cases. Lovato inspected the Pyes' property and prepared an estimate and documentation to be sent to Fidelity. Lovato determined the Pyes' ACV loss to total $175,180.00 for building damage.

10. Bearman also prepared a Proof of Loss for the Pyes to sign and return. The Proof of Loss simply claimed the entire policy limits of $253,400.00. The Proof of Loss, when received by the Pyes, had no accompanying report from Lovato, but Jeffrey Pye testified that he believed the market value of the building to be about $275,000.00 and that he personally believed that the claim Bearman had sent him was, therefore, accurate. Accordingly, Jeffrey signed the Proof of Loss and returned it to the attorney.

11. It appears Bearman then submitted the Proof of Loss together with Lovato's report to Fidelity for evaluation. Under the assumption that, at that time, Lovato's estimate was facially reliable, the Court finds that Bearman overstated the Pyes' claim in the Proof of Loss by about $78,000.000, without their awareness or conscious confirmation.

12. On October 10, 2009, Fidelity sent a letter signed by Robin Camus, a Fidelity Claims Adjuster, to Bearman rejecting "your Proof of Loss in the amount of $235,400.00"; a copy of the letter was sent to Mayo, but not the Pyes. The letter explained that Fidelity's denial of further payment was because the "amount claimed is not an accurate reflection of covered damages. Specifically you have included items not eligible for coverage" under the SFIP. In the letter, Camus stated that, despite its denial, it would send a field adjuster to the property to "determine if a potential supplement for covered damages is due your client."

13. Fidelity sent an adjuster to the property to meet with Lovato and inspect the property, but Lovato interfered with her inspection and frustrated her ability to assess any supplement damage. As a result, she left without completing an inspection. Apparently, no supplemental damage report to Fidelity was ever issued by the field adjuster.

14. In "early 2010" the Pyes sold the property "as is" for $58,000.00. Prior to the sale, they had not made any repairs. After all sale expenses were paid, the Pyes received about $50,000.00 which they used, with other funds, to pay off their mortgage.

15. On April 27, 2011, Mayo filed suit on behalf of the Pyes against Fidelity alleging breach of contract.

16. Following the filing of suit, Fidelity hired John Crawford, a forensic structural engineer and licensed contractor, to review the evidence, inspect the property, and assess the Pyes' claim for supplemental payment for building damage; in effect, to do what Fidelity's second adjuster was supposed to have done. Crawford was also to evaluate Lovato's estimate. Crawford found Lovato's estimate to be inaccurate, unreliable and highly excessive. Crawford did, however, determine that the Pyes would have been entitled to some supplemental payment and Deborah Price, Fidelity's Vice President of Claims, testified that she agreed with Crawford's finding.

17. The Court finds that on the facts in this case, the Pyes should not be held responsible for Bearman's overstatement of their claim in the July 27, 2009, Proof of Loss form submitted to Fidelity. Jeffrey Pye testified that he personally believed his loss exceeded his policy limits, therefore, he did not knowingly make any false statement when he, under oath, signed the Proof of Loss. He also testified that he was unaware of the Lovato estimate Bearman sent to Fidelity with the Proof of Loss, therefore, he would not have known that the documentation submitted to Fidelity by Bearman with his Proof of Loss did not "justify" the amount of his perceived loss. Normally, a client would be bound by the representations of his attorney, <u>Callip v. Harris County Child Welfare Dept.</u>, 757 F.2d 1513, 1522 (5th Cir. 1985) (citing <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 633 (1962)), but, "(w)hile an attorney is a special agent and his powers and

authority are confined to those necessary to the proper fulfillment of the duties cast upon him by his employment, if he exceeds his authority, absent ratification, the principle is not bound." Heine v. Schendel, 797 S.W. 2d 278, 280 (Tex. App. -- Corpus Christi 1990, reh'g overruled)   That is, the Pyes should not be bound to any unauthorized act of Bearman that was in conflict with their interests as his clients. Traylor v. Gray, 547 S.W. 2d 644, 651 (Tex. App. -- Corpus Christi 1977, reh'g denied)   There was no evidence that the Pyes authorized Bearman to submit a false or non-compliant Proof of Loss amount to Fidelity on their behalf and, in the absence of any evidence the Pyes knew the Proof of Loss prepared by Bearman overstated their loss, they cannot be found to have ratified his actions.  Cf. Household Credit Services, Inc. v. Driscol, 989 S.W. 2d 72, 87 (Tex. App. -- El Paso 1998) ("The elements of ratification are:  1) approval by act, word or conduct; 2) with full knowledge of the facts of the earlier act; and 3) with the intention of giving validity to the earlier act.")

 This finding is buttressed by the testimony of Price.  According to Price, Bearman submitted approximately 40 similar Proofs of Loss for his clients, Proofs of Loss she deemed to be "knowingly" fraudulent.  Moreover, the letter rejecting the Proof of Loss was not sent to the Pyes and there was no evidence that they ever saw it for purposes of ratification.  Under these circumstances, the Court will not attribute Bearman's statement of their claim to the Pyes.  To do so, would cause a forfeiture of their interests in the recovery of the insurance benefits that even Crawford and Price admit they would otherwise deserve, and it is well-settled that the law abhors forfeitures.

Duncan v. Aetna Life Insurance Co., 221 S.W. 691, 693 (Tex. 1920); Wagner & Brown Ltd. v. Sheppard, 282 S.W. 3d 419, 429 (Tex. 2009)

18. The Court finds that Fidelity's application of the SFIP provisions related to a Proof of Loss to be too Draconian. Price admitted that the SFIP required some interpretation and this Court is of the opinion that interpretation of the policy provisions, when necessary, should favor the insured. Cf. Rilley v. Rangers Management, Inc., 727 S.W. 2d 527, 530 (Tex. 1987) ("A court should construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served . . . Courts will not declare a forfeiture unless they are compelled to do so by language that can be constructed in no other way . . . Courts will avoid when possible and proper a construction which is unreasonable, inequitable, or oppressive.") Consequently, the Court will not, for example, interpret the SFIP to require the Proof of Loss amount to "match" exactly the submitted documentation or to automatically reject price "ranges" used in an estimate for projected repair and replacement costs or to invalidate an entire Proof of Loss because it contains what a WYO claims department deems some uncovered items. The SFIP simply provides that "(i)n completing the Proof of Loss, you must use your own judgment concerning the amount of loss and justify that amount."

19. The Court finds that the Proof of Loss amount for building damage that is attributable to the Pyes is found in the supportive documentation submitted by Bearman with the Proof of Loss form, i.e. the Lovato estimate. This finding is buttressed by the

testimony of Price that the "format" of a Proof of Loss is not defined, that the FEMA Form 31-42 is only one method of submitting a Proof of Loss and that other methods may be used. In the opinion of this Court, the Lovato estimate provided Fidelity with sufficient evidence to begin an evaluation of the Pyes' supplemental claim; in fact, as this Court knows, Fidelity has successfully evaluated numerous other challengeable Proof of Loss claims pitting Crawford against Lovato.

20. The Court finds that Crawford's "revised" ACV of the Pyes' flood damages in the amount of $147,340.01 to be reliable and correct. While the Court believes Lovato's estimate was sufficient to prompt further evaluation of the Pyes' claim, it finds his estimate unreliable and, therefore, rejects its relevant findings and conclusions.

21. The Court finds that the Pyes should be compensated by Fidelity based upon an ACV of $147,340.01.

22. Texas law recognizes the "One Satisfaction Rule" which provides that a Plaintiff should not be compensated twice for the same injury. Osborne v. Jaurequi, 252 S.W. 3d 70, 73 (Tex. App. -- Austin 2008, pet. denied)  The "double-recovery" bar applies in the context of insurance contracts. Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co., 236 S.W. 3d 765, 775 (Tex. 2007)

23. The Court finds that the One Satisfaction Rule applies in this case. Whether the Rule applies is determined not by the causes of action asserted, but by the injury sustained. AMX Enterprises, Inc. v. Bank One, N.A., 196 S.W. 3d 202, 206 (Tex. App. -- Houston [1st Dist] 2006) (citing Stuart Title Guaranty Co. v. Sterling, 822 S.W. 2d 1,

8 (Tex. 1981))  Consequently, the fact that the Pyes pursued mutually exclusive claims for windstorm damage and flood damage to their property is not determinative; the total damage to their property as a result of Hurricane Ike was the single injury they sustained for purposes of the One Satisfaction Rule. "Insurance contracts are contracts of indemnity. Therefore, an insured is barred from recovering twice for the same loss." Voth v. State Fire and Casualty Co., 2009 WL 498625 (W.D. La., Feb. 19, 2009)

24. The Court finds that "a plaintiff whose property sustains damage from flood and wind can clearly recover for his segregable wind and flood damages except to the extent he seeks to recover twice for the same loss." Esposito v. Allstate Insurance Co., 2007 WL 1125761*2 (E.D. La., April 16, 2007); see also, Weiss v. Allstate Insurance Co., 2007 WL 891869*2 (E.D. La, Mar. 21, 2007)  Therefore, the Pyes may only recover for any previously uncompensated losses that are covered by their flood policy until the amount recovered, when combined with the windstorm proceeds and any other appropriate offsets, if any, does not exceed the value of their home. Esposito at *2, see also, Davis v. Allstate Insurance Co., 2009 WL 122761*2 (E.D. La, Jan. 15, 2009)  The Court believes that Texas courts would, if they have not already done so, similarly apply Texas law.

25. The Court finds that the fair market value of the Pyes' property just prior to Hurricane Ike sets the limit of what the Pyes may recover for its structural damage. Cf. Hochheim Prairie Farm Mutual Insurance Association v. Burnett, 698 S.W. 3d 271,

275-277 (Tex. App. -- Fort Worth 1985) (Fair market value is the proper measure of damages for the total loss of a house destroyed by fire.)

26. The Court finds that the pre-Ike fair market value of the Pyes' property was $195,000.00. Alec Hendricks, a licensed real estate appraiser in the state of Texas, appraised the property and determined that as of August 16, 2007, its fair market value was $195,000.00. Hurricane Ike struck about one year later. Although the property may have appreciated in value during that one-year period, the only other evidence of its market value was the testimony of Jeffrey Pye, that in his opinion, the pre-Ike fair market value of the property was $270,000.00. While Jeffrey Pye, as an owner of the property, may, under Texas law, testify as to its fair market value, Burnett, 698 S.W. 3d at 276, the Court finds his opinion that between August 16, 2007, and September 13, 2008, the value of the property had appreciated by $85,000.00 is not reliable. Since the Court is not free to guess at the amount of its appreciation, if any, during that 11-month period, by default it must rely on the Hendicks appraisal by default.

27. The Court finds that Fidelity is entitled to offset the amount the Pyes actually received for structural damage to their home from their windstorm policy in the amount of $66,765.84. Of their settlement, $39,773.76 was paid to their attorney as fees and expenses. Unfortunately, for the Pyes, the settlement with TWIA was not otherwise allocated into categories of liabilities; therefore, Fidelity is presumptively entitled to offset the entire remainder. Mobil Oil Corp. v. Ellender, 986 S.W. 2d 917, 928 (Tex. 1998) see also, RSA Corporation v. International Insurance Co., 612 F.3d 851, 861-62

(5th Cir. 2010) (Interpreting and applying <u>Ellender</u> to determine unallocated settlement credits.)

28. The Court finds that Fidelity is also, of course, entitled to an offset of the $76,968.23 it has previously paid the Pyes for "building damage."

29. The Court finds that Fidelity is also entitled to an offset of the $58,000.00 sale price of the property against its pre-Ike fair market value.

30. The Court finds that for purposes of the One Satisfaction Rule, Fidelity is entitled to offsets totaling $201,734.07, which exceeds the pre-Ike fair market value of the property and, therefore, the Pyes are not entitled to any further supplemental compensation from Fidelity for building damage.

31. The Court finds that structural "car parts" do not measurably depreciate and the Pyes are, therefore, entitled to supplemental contents compensation from Fidelity in the amount of $2,500.00 for flood damage caused to the car parts.

**DONE** at Galveston, Texas, this ____6th____ day of January, 2014.

_____
John R. Froeschner
United States Magistrate Judge